UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| BRANDON ALAN MILLER, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 1:25-cv-196 |
| v. | ) | Judge Travis R. McDonough |
| THE CITY OF SODDY-DAISY, TENNESSEE, *et al.*, | ) | Magistrate Judge Christopher H. Steger |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendants City of Soddy-Daisy, Tennessee, Burt Johnson, Billy Petty, and Mike Sneed's ("Defendants") motion to dismiss and/or motion for summary judgment (Doc. 11). For the following reasons, Defendants' motion (*id.*) is **GRANTED**, and this case will be **DISMISSED**.

### I. BACKGROUND

#### A. Factual Background

Plaintiff Brandon Miller ("Plaintiff") worked as a detective for the Soddy-Daisy Police Department. (Doc. 20-1, at 7–8.) In March 2024, Plaintiff spoke to the county's district attorney about possible *Brady*[1] and *Giglio*[2] violations in a criminal case with a verdict. (*See id.* at 19–21, 159). Officers Jake Elrod ("Elrod") and Eric Jenkins ("Jenkins") also spoke about these possible violations with the district attorney. (*See id.* at 20.) Subsequently, the district attorney disclosed

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).
[2] *Giglio v. United States*, 405 U.S. 150 (1972).

information to the defense counsel in the related criminal matter. (*Id.* at 21.) Once the information about the criminal case became public, Plaintiff testified that communications ceased with him. (*Id.* at 22, 30–31.) After the meeting with the district attorney, on April 25, 2024, a less qualified officer was promoted to Lieutenant at SDPD over Plaintiff even though he was "most qualified officer for promotion." (*Id.* at 57–58, 159.)

On April 30, 2024, there was a hearing in the criminal matter, and Elrod and Jenkins testified. (*Id.* at 131, 159, 163.) After the hearing, Elrod and Jenkins were suspended with pay, and Plaintiff was removed from his officer-in-charge position. (*Id.* at 23, 59.) After Elrod and Jenkins's suspension, Plaintiff felt that "all communications with patrol kind of ceased with [him], almost as if people were scared to . . . be tied to [him.]" (*Id.* at 30.)

"Prior to [Plaintiff's] resign[ation]," an email was sent about an upcoming supervisor training, which Plaintiff did not receive. (*Id.* at 31.) Plaintiff took that email to mean that "[he was] done, . . . and [he] tendered [his] resignation . . . two days later or a day later." (*Id.*) He turned in his two weeks' notice on June 3, 2024. (*See* Doc. 11-1, at 9.) After he turned in his notice, Plaintiff noticed that individuals were "com[ing] up and hang[ing] out around [him]" more. (Doc. 20-1, at 30–31.) Plaintiff's last day working at Soddy-Daisy Police Department was June 17, 2024. (*Id.* at 27.) On July 31, 2024, Burt Johnson, City Manager of Soddy-Daisy, terminated Elrod and sent him a termination letter that stated the reasons for Elrod's termination. (*See id.* at 162–64.) The letter mentions the Plaintiff once. (*See generally id.*) Specifically, the letter states that Elrod's "true feelings were revealed," and "[t]he only change during this period was the fact that [SDPD] waited to do any promotions and that Elrod would not be moving to lieutenant over patrol and [Plaintiff] would not be promoted to lieutenant over investigations." (*Id.*)

### B. Procedural History

Plaintiff commenced this suit on June 17, 2025, alleging violations under the First Amendment, Tennessee Public Protection Act, and Tennessee Public Employee Political Freedom Act. (*See* Doc. 1, at 23–35.) On August 19, 2025, Defendants filed a motion to dismiss and/or motion for summary judgment. (Doc. 11.) In Defendants' motion, they contend that Plaintiff's claims are barred by the statute of limitations, and if not time-barred, Plaintiff's First Amendment claims should be dismissed because his speech was made pursuant to his official duties. (*See id.*) Plaintiff timely responded to Defendants' motion. (Doc. 20.) Defendants' motion is ripe for review.

## II. Converting a Motion to Dismiss to a Motion for Summary Judgment

Federal Rule of Civil Procedure 12(d) requires "that if, in a 12(b)(6) motion to dismiss, 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* (quoting Fed. R. Civ. P. 12(d)) (holding that a party had a reasonable opportunity to present materials outside the pleadings when the opposing party's motion to dismiss included a release, a document outside the pleading, and mentioned that the motion to dismiss could be converted to a motion for summary judgment).

Defendants pose their motion as a "motion to dismiss and/or motion for summary judgment" and attach several documents outside of the pleadings to their motion—including excerpts from Plaintiff's deposition and Plaintiff's resignation letter. (*See* Docs. 11, 11-1.) Plaintiff's opposition similarly attaches documents outside of the pleadings—a longer version of Plaintiff's deposition, the deposition of Billy Petty, the deposition of Mike Sneed, a report conducted by private investigators, and Elrod's termination letter. (*See* Doc. 20-1.) Because

3

both parties submitted materials outside of the pleadings and relied on those materials in their briefings (*see generally* Docs. 12, 20) the Court will construe Defendants' motion as a motion for summary judgment.

### III. STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy,*

*Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

IV. **ANALYSIS**

    A. **Plaintiff's First Amendment Claims**

Plaintiff asserts First Amendment retaliation claims pursuant to 42 U.S.C. § 1983 and related conspiracy claims against all Defendants. (*See* Doc. 1, at 23–36.) To succeed on a claim under § 1983, a plaintiff must typically show "that he or she was deprived of a right secured by the Constitution or laws of the United States" and "that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted).

Section 1983 "lacks its own statute of limitations." *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024). To determine the statute of limitations length, courts look at state law. *See id.* "[T]he limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)." *Porter v. Brown*, 289 F. App'x 114, 116 (6th Cir. 2008) (citing *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tennessee*, 769 F.2d 879, 883 (6th Cir. 1986)).

Courts, however, use federal law to "determine[] when a 1983 claim *accrues* to trigger the running of this state statute of limitations." *Reguli*, 109 F.4th at 879. "As a general matter, the statute of limitations begins to run when the plaintiff has a 'complete and present cause of action.'" *Reed v. Goertz*, 598 U.S. 230, 235 (2023) (citation omitted). The Sixth Circuit uses the "discovery rule," which "postpones the limitations period to the date that the plaintiff discovered, or reasonably should have discovered, basic facts about the claim." *Reguli*, 109 F.4th at 879 (citations omitted) (holding that the plaintiff's time began to accrue when her injury occurred rather than when plaintiff learned about the defendant's motivation for the injury).

5

> A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. In this objective inquiry, courts look to what event should have alerted the typical lay person to protect his or her rights. At that point, the plaintiff has a complete and present cause of action, such that he can file suit and obtain relief.

*Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (citation modified).

"Whether a plaintiff has a complete and present cause of action under § 1983 turns on the 'specific constitutional right' at issue." *Reguli*, 109 F.4th at 880. There are three elements for a First Amendment retaliation claim: (1) plaintiff must have engaged in protected speech; (2) a "state actor must have taken an 'adverse' (that is, harmful) action against the plaintiff[;]" and (3) "a 'causal connection' must exist between these elements—such that the protected speech motivated (indeed, qualified as a but-for cause of) the adverse action." *Id.* (citations omitted). For public employees, they must "meet additional standards to establish that the speech is constitutionally protected." *Fitzpatrick v. City of Frankfort, Kentucky*, 305 F. App'x 258, 262 (6th Cir. 2008) (listing the three factors for public employees to show their speech is protected).

Here, the parties do not dispute that the statute of limitations for § 1983 is one year. (Doc. 12, at 6; Doc. 20, at 11.) The parties dispute when the claim accrued. (*See* Doc. 12, at 7–10; Doc. 20, at 6–11.) Defendants assert that the alleged adverse actions against Plaintiff occurred at the latest "on June 3, 2024, when the Plaintiff tendered his notice of resignation[.]" (Doc. 12, at 8–9.) Plaintiff does not dispute that he turned in his resignation letter on June 3, 2024. (Doc. 20, at 7.) He argues though that the accrual period did not begin until July 31, 2024, when Elrod and Jenkins were terminated and Plaintiff was mentioned in Elrod's termination letter. (*See id.* at 7–8.)

Plaintiff's claims are barred by the statute of limitations. Plaintiff's alleged "protected" speech[3] occurred when he went with Elrod and Jenkins to speak to the district attorney, in March 2024, about possible *Brady* and *Giglio* violations in a criminal matter. (Doc. 20-1, at 19–21, 159.) Plaintiff testified that after information about the possible violations in the criminal matter became public, in April 2024, he was ostracized at work and passed over for a promotion. (*Id.* at 22, 30–31, 57–58, 159.) According to Plaintiff, there was a causal connection between the alleged protected speech and his being passed up for a promotion. (*Id.* at 57.) On a similar note, Plaintiff testified that he was removed as the officer-in-charge in retaliation for Plaintiff's alleged protected free speech. (*Id.* at 59–60, 69.) All these events occurred prior to Plaintiff tendering his resignation on June 3, 2024 (*id.* at 57, 59), which is over a year from when Plaintiff filed his suit. Therefore, reasonable minds could not differ that Plaintiff had reason to know of his injury by June 3, 2024.[4]

Plaintiff argues that his accrual period did not start until he was mentioned in Elrod's termination letter, which alerted him that he could be fired. (Doc. 20, at 8.) However, Plaintiff was no longer employed at Soddy-Daisy Police Department when the letter was sent (*see* Doc. 11-1, at 9), and the only mention of Plaintiff in Elrod's letter was that Elrod's behavior changed towards the Defendants after Plaintiff was passed over for a promotion (Doc. 20-1, at 163–64). The letter makes no mention that Plaintiff could be fired.[5] (*See id.*) Instead, the letter affirms

---

[3] Because the Court finds that Plaintiff's claims are barred by the statute of limitations, the Court need not determine whether Plaintiff's speech was protected under the First Amendment or was made pursuant to his official duties.

[4] Plaintiff also testified that, prior to his resignation on June 3, 2024, an email was sent about an upcoming supervisor training, which Plaintiff did not receive. (Doc. 20-1, at 31.) Plaintiff took that email to mean that his career was over and resigned a day or two later. (*Id.*)

[5] Even if the Elrod's letter did speak to the motivation for not promoting Plaintiff, the Sixth Circuit has stated that the accrual period begins when the plaintiff "learn[s] of [defendant's]

7

Case 1:25-cv-00196-TRM-CHS    Document 23    Filed 03/03/26    Page 7 of 11    PageID #: 319

what Plaintiff claims—that he was not promoted. (*See id.*)  The letter to Elrod is not an adverse action against Plaintiff.

Plaintiff next argues that "his claims are timely under the continuing violations exception[.]"  (Doc. 20, at 9.)  The Sixth Circuit recognizes two categories of continuing violations:

> The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently imposes [sic] disparate work assignments or gives unequal pay for equal work . . . .  The second category of continuing violation arises where there has occurred a long-standing and demonstrable policy of discrimination.  This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure.

*Sharpe v. Cureton*, 319 F.3d 259, 266–67 (6th Cir. 2003) (citation omitted).  The continuing violations doctrine "rarely extends . . . to § 1983 actions." *Id.* at 267.  "[W]hen an employee seeks redress for discrete acts of discrimination or retaliation"—such as termination or failure to promote—"the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)).  Hostile-work-environment claims "involve unlawful employment practices that cannot be said to occur on any particular day, but occur over a series of days or years." *Id.* (citation omitted).  "A charge alleging a hostile-work-environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.  Being ostracized or isolated at work is not enough to sustain a claim of a hostile-work-environment; a party needs to allege that ostracization and isolation were motivated by

---

adverse action—not the date [plaintiff] learned of [defendant's] motive for this action." *Reguli*, 109 F.4th at 884.

discrimination or retaliation. *See Russell v. Ohio, Dep't of Admin. Servs.*, 302 F. App'x 386, 394 (6th Cir. 2008).

Here, for the first category, Plaintiff testified that, after information about the possible violations in the criminal matter became public, he was "treated differently and ostracized[,]" but that behavior ceased once he turned in his notice of resignation on June 3, 2024—over a year from when this suit was filed. (Doc. 20-1, at 22, 30–31.) However, there is no evidence in the record that there was an act that would constitute a continuing violation after Plaintiff resigned. Accordingly, the alleged continuing violations are time-barred.

For the second category, Plaintiff has not claimed or produced evidence that he represents a class or that Defendants implemented a policy of class-wide discrimination to invoke the "long-standing and demonstrable policy of discrimination" that is needed for the continuing violation doctrine's second category. (*See generally* Doc. 20, at 9–11.). Therefore, the second category for the continuing violations doctrine is inapplicable to this case. Since all of Plaintiff's § 1983 claims are time-barred, those claims are dismissed.

### B. Plaintiff's State Law Claims

Having found that Plaintiff's federal claims should be dismissed, the Court will consider whether it retains jurisdiction over Plaintiff's state law claims. Plaintiff asserts state law claims under the Tennessee Public Protection Act and the Tennessee Public Employee Political Freedom Act.[6] (Doc. 1, at 29–35.)

---

[6] Plaintiff has two causes of action titled "Count Eleven"—one for "punitive damages" and the other for "permanent injunction." (Doc. 1, at 35.) However, both punitive damages and permanent injunctions are remedies and not causes of action. *See Oakley v. Simmons*, 799 S.W.2d 669, 672 (Tenn. Ct. App. 1990) ("[T]here can be no cause of action for punitive damages alone); *Hobbs v. Kroger Ltd. P'ship I*, No. 3:18-cv-01026, 2019 WL 1861330 at *2 (M.D. Tenn. Apr. 24, 2019) ("Punitive damages is not a cause of action but rather is a remedy."); *City of Leb.*

"Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384–85 (6th Cir. 2003)). "If [] federal claims are dismissed before trial, [] state claims generally should be dismissed as well." *Id.* (quoting *Wojnicz*, 80 F. App'x 384–85). However, a court should also "consider factors such as judicial economy, convenience, fairness, and comity, when deciding whether to decline to exercise supplemental jurisdiction over the remaining state law claim[s]." *Brown v. Scott*, No. 2:23-CV-162, 2025 WL 1347312, at *4 (E.D. Tenn. May 8, 2025) (quoting *Williams v. Cawley*, No. CIV.03-10189-BC, 2005 WL 1030338, at *1 (E.D. Mich. Apr. 26, 2005)). There is a "strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed," and it should only be exercised if "the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the] concern over needlessly deciding state law issues." *See Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citation modified)).

Here, the Court had jurisdiction over this suit pursuant to 28 U.S.C. § 1331, as Plaintiff alleged federal claims. (*See* Doc. 1.) The Court has dismissed Plaintiff's federal claims above, and only the state law claims remain. The Court finds that the interests of judicial economy and abstention from needlessly deciding state law issues weigh against exercising supplemental jurisdiction. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

## V. CONCLUSION

---

*ex rel. Craighead v. Dodson*, No. M2016-01745-COA-R3-CV, 2018 WL 2027239, at *14 (Tenn. Ct. App. Apr. 30, 2018) ("Injunctive relief . . . is a remedy, not an independent cause of action.").

For the reasons stated herein, Defendants' motion for summary judgment (Doc. 11) is **GRANTED**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**